UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| SYLVIA A. GIBSON, | ) | No. ED CV 08-01467-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | THEREON |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Sylvia A. Gibson ("Plaintiff") filed a Complaint on October 20, 2008, by and through her counsel, pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's ("Commissioner") decision that she was not entitled to Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). Plaintiff seeks reversal of the Commissioner's decision, or in the alternative, for the Court to remand the matter for a new hearing.

The parties have consented to proceed before United States Magistrate Judge Victor B. Kenton, pursuant to 28 U.S.C. § 636(c). The Commissioner has filed the certified Administrative Record ("AR").

On May 20, 2009, pursuant to this Court's case management Order, the parties filed a Joint Stipulation ("JS"). The Court then took the matter under submission. This Memorandum Opinion shall constitute the Court's findings of facts and conclusions of law.

## I

## BACKGROUND

Plaintiff filed her application for SSI on January 24, 2007. (AR 93-96, 24.) Plaintiff alleged an onset date of disability of February 1, 2006. (AR 93.) Plaintiff alleged disabling conditions of degenerative disc disease of the back and shoulders. (AR 101.)

Plaintiff's application was originally denied on December 15, 2006, and then again upon reconsideration on May 4, 2007. (AR 77, 84-86.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 75), which occurred in San Bernardino, California on January 16, 2008 before ALJ Philip E. Moulaison. (AR 41-65.) Plaintiff appeared and testified and was represented by counsel, and testimony was also taken from a Vocational Expert ("VE"). Id.

On April 24, 2008, the ALJ issued a decision finding Plaintiff to be not disabled under the Act. (AR 24-30.) Plaintiff's request for review by the Appeals Council was denied on September 20, 2008 (AR 4-6), thus rendering the ALJ's decision the final decision of the Commissioner.

In her Complaint, Plaintiff raises the following issues:

(1) The ALJ failed to give specific and legitimate reasons supported by substantial evidence in the record for rejecting her treating physician's opinion; and

(2) The ALJ improperly rejected Plaintiff's credibility as to

2

her subjective complaints.

## II

## **DISCUSSION**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying Plaintiff's disability benefits to determine whether his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).

A claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a <u>prima</u> <u>facie</u> case of disability." <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the

3

claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity ("RFC") despite the impairment or various limitations to perform her past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. §§ 404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a *prima facie* case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Following this sequential evaluation process, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (AR 26, Finding 1.) At Step Two, the ALJ found that Plaintiff has an impairment or combination of impairments considered severe (Id., Finding 2), but at Step Three found such impairments do not meet or medically equal one of the Listings. (Id., Finding 3.) At Step Four, the ALJ found that Plaintiff has sufficient RFC to perform at least a wide range of light

4

work including sitting, standing and walking up to six hours a day, lifting and carrying ten pounds frequently and twenty pounds occasionally, and occasional bending, kneeling, and crawling. (AR 26-27, Finding 4.) At Step Five, the ALJ found that she was not under a disability under the Act since the filing date of the application. (AR 29, Finding 10.)

### III

### **THE ALJ FAILED TO PROVIDE SPECIFIC AND LEGITIMATE REASONS FOR REJECTING THE TREATING PHYSICIAN'S OPINION**

**A.   The ALJ's Decision.**

The ALJ concluded Plaintiff can perform medium work activity including occasionally lifting and carrying up to fifty pounds and unlimited sitting, standing, and walking. (AR 28.)

In his decision, the ALJ gave "less weight" to the opinions of Plaintiff's physicians of record and her physical therapist "because there is nothing in the objective record to support their finding that [Plaintiff] is limited to less than sedentary activity, and based on the lack of anything other than very limited conservative treatment modalities including two courses of physical therapy and pain medications." (AR 28, exhibit citations omitted.)

Further, the ALJ specifically "rejected" the opinions of Drs. R. Drenning-Manrriquez and S. Mondol "because their finding that the [Plaintiff] could perform less than sedentary activity ... is not support by the greater objective clinical and laboratory findings of record." (AR 28, exhibit citation omitted.)

Finally, the ALJ rejected similar functional limitations placed

5

on Plaintiff by what the ALJ determined to be "an unidentifiable orthopedic specialist at the Riverside Regional Medical Center" on February 9, 2007. (AR 28-29, 229-230.) The ALJ discounted this particular opinion because it was "based on the one-time nature of this visit and because the finding that the [Plaintiff] is limited to one hour of sitting, standing and walking a day, with lifting to ten pounds maximum, is not supported by any objective medical evidence of record." (AR 28-29.)

The ALJ essentially rejected all of these opinions in favor of the opinion in an orthopedic consultative examination ("CE") performed on November 16, 2006 at the request of the Department of Social Services by Dr. Sophon, who concluded that Plaintiff could perform medium work activity, with lifting and carrying to 50 pounds occasionally and 25 pounds frequently, and unlimited sitting, standing and walking. (AR 28, 182-186.)[1]

**B.  Applicable Law**.

The opinions of treating physicians are generally accorded greater weight than those of examining and non-examining physicians because they are more likely to provide:

> "... a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

---

[1] Although the ALJ seemingly adopted the functional limitations assessed by Dr. Sophon, nevertheless, the ALJ determined that Plaintiff is only capable of a wide range of light work. (AR 29.) The manner in which the ALJ relied on Dr. Sophon's conclusions, has arrived at a finding that Plaintiff is nevertheless capable of only light work, is never explained in the decision.

findings alone or from reports of individual examinations, such as consultative examinations. . ." 20 C.F.R. §§ 404.1527(d) and 416.927(d).

The Ninth Circuit has repeatedly reaffirmed this principle. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(affording greater weight to treating physicians' opinions because they have greater opportunity to know and observe the patient).

Still, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Id., citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). The ALJ may reject a treating physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Magallanes 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)). Further, the ALJ may disregard the treating physician's opinion whether or not it is contradicted; however, when he chooses to reject it in favor of the opinion of a non-treating physician, he must provide specific and legitimate reasons based on substantial evidence in the record to do so. Id., citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). This clearly articulated rule, set forth by the Circuit in its opinions in Magallanes and Cotton, has been often cited in later decisions. See, e.g., Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

In Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007), the Ninth Circuit established that an ALJ gives specific and legitimate reasons

when:

> "... setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct." Id. at 632 (citations omitted).

In Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988), the Circuit found that a general reference to a lack of supportive objective evidence in the record does not constitute a specific and legitimate reason for rejecting the opinion of a treating physician.

**C.  Analysis.**

Plaintiff primarily relies on the opinion of her treating physician of over ten years, Dr. Rogelio Drenning-Manrriquez ("Dr. Drenning") (see AR 307), whose medical report dated August 8, 2007 states that she suffers from permanent multilevel degenerative disc disease. (AR 216.)  Further, Dr. Drenning checked the "No" boxes beside the questions, "Can this person work full-time at some other job?" and "Can this person work part-time at some other job?" Id. It is a logical inference that these conclusions were based on Dr. Drenning's review of x-rays and an MRI he had ordered prior to writing the report. (AR 209-212, 233.)

Dr. Drenning's diagnosis is consistent with the findings of her two other treating sources, Drs. Mondal and Minkoff, and physical therapist Glyniss Green, all of whom examined her on a regular basis and reviewed pertinent x-rays of her back, hips, and shoulders. (See

AR 268-269, 177, 178-179.) Dr. Mondal concluded in his medical report that Plaintiff could sit for two hours and walk for one-half hour per work day, occasionally reach above shoulder level, occasionally lift and carry up to ten pounds, and never crawl or climb. (AR 268.) Dr. Minkoff concluded that Plaintiff could sit for a maximum of three hours and walk for a maximum of two hours per work day, occasionally lift and carry up to ten pounds, and never crawl or climb. (AR 176.) Physical therapist Glyniss Green concluded that Plaintiff could sit for a maximum of one hour and walk for a maximum of one hour per work day, occasionally climb, frequently reach above shoulder level, occasionally lift up to twenty-four pounds and occasionally carry up to ten pounds for a short distance, and never crawl. (AR 178.)

In contrast, the orthopedic CE found Plaintiff had normal range of motion in her extremities and could lift and carry twenty-five pounds frequently and fifty pounds occasionally, with no limit to her ability to sit, stand, walk, or bend. (AR 184-86.) He had reviewed her MRI results, but not her x-rays, or the report of the physical therapist. (AR 182.)

The ALJ provided two bases for rejecting Dr. Drenning's opinion. First he found that there was nothing in the objective record to support the doctor's opinion that Plaintiff is limited to less than sedentary activity. (AR 28.) Second he relied upon a conclusion that Plaintiff was prescribed only conservative treatment modalities, including two courses of physical therapy and pain medication. Id.

The ALJ's conclusion that treating source opinions were not based on objective clinical evidence is erroneous. X-ray results from February 9, 2006 showed signs of degenerative disc disease in the spine of the L5-S1 and mild bilateral facet arthropathy at L3-4, as

1  well as degenerative changes of the left shoulder joint. (AR 205-206.) An MRI of the lumbar spine performed on August 23, 2006 showed disc bulge, endplate spurring, and facet hypertrophy of the L5-S1 and mild narrowing of the neural foramen in both the L5-S1 and L3-4. (AR 209.)

On February 9, 2007, additional x-rays of Plaintiff's lumbar spine area were performed and revealed degenerative disc space narrowing at L3-4 with a suggestion of instability based on flexion extension views and facet sclerosis at L3-4 and also at L4-5 and L5-S1. (AR 233.)

On November 15, 2007, Dr. Drenning ordered an x-ray of Plaintiff's hips, which revealed "moderate chondromalacia and osteoarthritis of the right hip joint" along with "mild chondromalacia and moderate osteoarthritis of the left hip joint." (AR 301.)

The ALJ's second rationale, that Plaintiff's conservative treatment regimen justifies rejection of Dr. Drenning's opinion, also fails to meet the "specific and legitimate reasons" test.

The record indicates that Plaintiff has been prescribed physical therapy and pain medications. There is no evidence to support any requirement that more radical forms of medical care, such as surgery, were required.

Therefore, the Court finds the ALJ's reasons for giving reduced weight to the treating physicians' opinions are not supported by specific and legitimate reasons.

//
//
//
//

## IV

## **THE ALJ ERRED IN DISCREDITING PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

### A. The ALJ's Decision

The ALJ found Plaintiff's testimony regarding the severity of her symptoms to be inconsistent with the RFC assessment, and therefore not credible. (AR 27.)

The ALJ first justified this finding by citing the CE's opinion that Plaintiff has normal range of motion in the shoulders, upper and lower extremities, no muscle atrophy, normal muscle strength, no evidence of tenderness, swelling, deformity, asymmetry, or paravertebral muscle spasm throughout the spine. (AR 27-28.)

Second, the ALJ undermined Plaintiff's credibility by citing a contradiction between physical therapy notes evidencing decreased pain in the back and hips and Plaintiff's allegation that she received little benefit from therapy or that her pain is unrelieved with treatment. (AR 28.) Specifically, the ALJ cited progress notes through May 30, 2006 showing improvement in hip and back pain and discharge notes from another session ending February 2007, reporting decreased back pain with medication. (AR 28, citing AR 189-201, 253-267.)

Third, the ALJ depreciated Plaintiff's credibility based upon his conclusion of an improper motivation to seek SSI. Because this Court will require reassignment to a new ALJ on remand, the following statements in the ALJ's decision, which reference an apparent lack of impartiality, will be quoted:

> "The [Plaintiff's] alleged limitations are inconsistent

with the fact that she has raised 8 children, the youngest now being 19 years old. Three of those children were collecting SSI payments based on disability, and her husband now collects disability payments based on a 40% disabled rating. The [Plaintiff's] children are now grown and are no longer providing the [Plaintiff] with disability funds. It would therefore appear that the [Plaintiff's] alleged disability is more related to her incentive to find a new source of income to replace her children's past disability payments than to her own alleged disabling impairments." (AR 28.)

Fourth, the ALJ found Plaintiff's general lack of work history, and her work as an extra in filmed commercials as factors undermining her credibility. Id.

**B.   Applicable Law.**

In determining disability, the ALJ must consider all symptoms alleged by the claimant to the extent they are consistent with the objective medical evidence and other evidence on record. 20 C.F.R. § 416.929(a). The ALJ must perform two stages of analysis in deciding whether to accept a claimant's subjective symptom testimony. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

The first requires claimants to establish, through medical evidence, that their symptoms are reasonably likely to be caused by underlying impairments. Specifically, there must be medical and laboratory findings showing medical impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged.

12

20 C.F.R. § 416.929(a).

Once claimants satisfy the first test, and there is no affirmative evidence of malingering, the ALJ must consider the severity of the symptoms. Smolen, 80 F.3d at 1284. Because pain is subjective and not susceptible to reliable measurement, the ALJ may only reject specific symptom testimony for lack of credibility. Id. at 1282. Clear and convincing reasons based on facts in the record must be given for concluding a lack of credibility. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991). This includes identifying, "what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722. The ALJ's conclusion must consider the effect of symptoms on the claimant's ability to work on a sustained basis. Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) (citing 20 C.F.R. § 404.1512(a). Activities engaged in while the claimant is at home may not be easily transferable to the workplace; therefore, only if the level of activity is inconsistent with testimony will such activity effect credibility. Reddick, 157 F.3d at 722 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

**C. Analysis.**

Plaintiff testified to symptoms including pain in the lower and upper back, left shoulder, both hips, right leg, and finger joints. (AR 52.) She also testified to experiencing occasional numbness running down her legs to her feet. (AR 51, 53.) Plaintiff's treatment consists of taking multiple pain medications, use of a TENS unit and shoulder pulley, and soaking in hot water. (AR 48, 52.) Plaintiff testified that her mobility is limited to sitting or

1  standing for thirty to sixty minutes at a time, and that she needs to
2  lie down three to four times a day for two hours each. (AR 50-52 and
3  55-56.)  Plaintiff is unable to sweep, mop, or vacuum, and her
4  daughter stays with her full time to cook and clean. (AR 47-48.)
5  Plaintiff can walk a half block before needing rest, cannot
6  bend without pain, and is unable to climb stairs. (AR 50-51.)
7  Plaintiff contends the reasons given by the ALJ for concluding her
8  testimony was not credible are either insufficient to be considered
9  clear and convincing or inaccurate. (See JS 21-23.)

10      The ALJ's reliance upon the CE's medical conclusions as a basis
11 to depreciate Plaintiff's credibility is untenable.  The Court has
12 already determined that the ALJ erred in relying upon the CE instead
13 of the consistent but contradictory findings of her treating sources.
14 Moreover, as the Court has noted, the ALJ, for reasons unexplained in
15 the decision, found that Plaintiff's RFC was more limited than that
16 found by the CE, whose opinion the ALJ seemingly adopted.

17      Second, the ALJ erred in concluding that physical therapy
18 progress notes through May 30, 2006 and from the period between
19 November 2006 and February 2007, noting improved back and hip pain,
20 contradicted Plaintiff's allegation that she received little benefit
21 from treatment. (JS at 13; AR 28.)  Weekly reports from physical
22 therapy through May 30, 2006 document that Plaintiff's condition
23 varied depending on the week she treated. (AR 193.)  Notes from May
24 8, 2006 and May 30, 2006 indicate Plaintiff reported feeling better,
25 whereas reports from May 15, 2006 and May 22,2006 indicate increased
26 soreness.  Id.  Further, a discharge summary from the physical
27 therapist dated November 14, 2006 states Plaintiff still experienced
28 pain and made an excellent candidate for use of a TENS unit, a device

1  that sends waves of electricity through a patient's skin to relieve
2  pain.  (AR 255.)  Another discharge summary from the conclusion of a
3  therapy session a few months later on February 21, 2007 states
4  Plaintiff still experienced pain with sustained activity.  (AR 254.)
5     The ALJ based his conclusions on snapshots of single weeks of
6  Plaintiff's treatment where she experienced reduced pain.  Assuming,
7  however, Plaintiff did experience improved back and hip pain after
8  certain physical therapy sessions, this hardly constitutes clear and
9  convincing evidence of compromised credibility.  It is not expected
10 patients may have periods where symptoms are less severe.
11    Third, the ALJ erred in citing Plaintiff's work history,
12 including "some work done as an extra filming commercials" (AR 28) as
13 undermining her credibility. (AR at 28.)  This rationale does not
14 suffice to undermine Plaintiff's credibility.
15    Fourth, the ALJ speculated by stating that Plaintiff's disability
16 claim is likely more related to a desire to find a new source of
17 income to supplant discontinued disability payments for her three
18 grown disabled children.
19    For the foregoing reasons, the Court finds that the credibility
20 assessment as rendered in the decision is legally and factually
21 insufficient.  On remand, Plaintiff's credibility with regard to her
22 subjective symptoms will be reassessed according to applicable legal
23 standards, with adequate evidentiary support.
24    Furthermore, upon remand a new ALJ will be assigned to this
25 matter.
26 //
27 //
28 //

## **ORDER**

**IT IS ORDERED** that this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

DATED: July 1, 2009                                /s/
                                         VICTOR B. KENTON
                                         UNITED STATES MAGISTRATE JUDGE